# Ellwood City Motor Coach Co. v. Ellwood City Traction Workers Union et al.

*Reed, Ewing & Ray* and *Matthews & Matheny,* for plaintiff.

*Michael A. Barletta,* for defendants.

LAMOREE, J., November 17, 1948.—The Ellwood City Motor Coach Company seeks a preliminary injunction against the Ellwood City Traction Workers Union, American Arbitration Association and Charles Lysle Seif, seeking to restrain them from continuing or proceeding with the arbitration of the dispute between plaintiff and the Ellwood City Traction Workers Union. A preliminary restraining order was granted by the court and the matter was heard in open court on October 6, 1948. After the preliminary hearing counsel for plaintiff and defendants agreed that the testimony produced at the hearing held on October 6, 1948, should constitute the entire and complete testimony in the case and that the courts' adjudication and decree on the preliminary hearing be considered as a final adjudication and decree. The court approved that agreement.

From the testimony produced at the hearing and from the record before us, we make the following

## Findings of Fact

1. The Ellwood City Motor Coach Company is a corporation, operating a bus line in the Borough of Ellwood City, Lawrence County, Pa., and in the surrounding country.

2. The Ellwood City Traction Workers Union is an unincorporated association, some members of which are employes of plaintiff.

3. The American Arbitration Association is a corporation and Charles Lysle Seif is an individual who serves as arbitrator for the association.

4. On February 28, 1948, because of a dispute between plaintiff and defendant union, plaintiff employes went on strike.

5. The said strike continued until April 19, 1948, when plaintiff employes returned to work under an oral agreement with plaintiff that plaintiff would meet with and negotiate a collective bargaining agreement with defendant union.

6. A written agreement designated as "Supplemental Agreement between Ellwood City Motor Coach Company and Ellwood City Traction Workers Union", was entered into on April 17, 1948. This agreement was signed by an official of plaintiff company and three members of defendant union.

7. By the terms of the agreement, dated April 17, 1948, plaintiff and defendant union agreed that "negotiations shall be entered into and continued for a period not to exceed two (2) weeks from the date of April 17, 1948, excepting as may be otherwise mutually agreed upon by the parties. Failing to reach an agreement or extension by mutual agreement of the period for negotiating as heretofore set forth, the parties may request that the disputed matters be submitted to arbi-

tration, and such request shall be binding upon the other, that all matters unresolved shall be submitted to the American Arbitration Society for final arbitration and adjudication, and it is further agreed that the decision of the Arbiter shall be binding upon the parties".

8. Negotiations between plaintiff company and defendant union continued for a considerable time during which the parties agreed on all but five of the matters in dispute.

9. On July 23, 1948, the parties having been unable to conclude a satisfactory agreement, sent a letter to the American Arbitration Association requesting the association to "assume jurisdiction in arbitration of the dispute now presently outstanding between the aforesaid parties". The letter further stated, "The disagreement is one of wages and contract terms". This letter was signed by C. R. Wooster, manager of plaintiff company, and by Wm. G. Clark, president of the Lawrence County Industrial Union Council.

10. Under date of July 26, 1948, the American Arbitration Society wrote to Clark and Wooster acknowledging their letter of July 23, 1948, and stated therein:

"For the information of the Arbitrator, upon his appointment and to complete the Association's file, may I suggest you forward a somewhat more detailed statement of the controversy."

11. Under date of August 2, 1948, counsel for plaintiff company wrote to the American Arbitration Association, setting forth therein the statement of the matter in controversy:

"The company and the union settled a strike by an agreement that the Company would recognize the Union and negotiate a contract with it, which negotiations have continued and have resulted in a virtual agreement on all matters except the hourly wage rate of the employees. The parties have agreed that this amount

may be set by arbitration. The only matter then to be discussed in this proceeding is the proper hourly wage rate of the drivers and mechanics of the Company."

12. Under date of August 5, 1948, Wm. G. Clark, president of Lawrence County Industrial Union Council, wrote to the American Arbitration Association setting forth the issues in dispute as follows:

"The first point in dispute is found under Item No. 2. The Union has asked for an hourly increase of 30 cents per hour. The Company has countered with an offer to pay 5 cents per hour as of July 1, 1948, plus 5 cents per hour more as of September 1, 1948, and has also offered 5 cents per hour retroactive from April 1st to July 1st, 1948."

"The second point of dispute is found under Item No. 4. The Union has requested a minimum reporting pay of two hours. The Company has offered in lieu of two hours, a total of 1½ hours."

"The third point of dispute is found under Item No. 5. The Company has refused the proposal in its entirety."

"The fourth point of dispute is found under Item No. 6. The Company has refused a premium wage of any kind for work on charter, countering with an offer to pay 75 cents per meal for drivers out of town on charter."

"The fifth point of dispute is found under Item No. 10. The Company has refused to comply with the request. However, they have countered to provide some measure, undefined as yet, in place of the Union Proposal."

"The Union will prepare for the Arbitrator's pleasure, a complete statement of the issues and of the Union's position and present same during the course of the Arbitration Hearing."

13. On August 16, 1948, Charles L. Seif, Esq., was appointed arbitrator by the American Arbitration

Association with the approval of plaintiff company and defendant union.

14. Notice was given by Charles L. Seif, arbitrator, to plaintiff company and defendant union that a meeting was set for September 24, 1948, at 10 o'clock a.m. (D. S. T.), in the Municipal Building, Ellwood City, Pa. Said meeting was held and a second meeting was set for October 1, 1948, at the same place at 10 o'clock a.m.

15. The meeting set for October 1, 1948, was not held by reason of a preliminary restraining order having been issued by the court on plaintiff's bill of complaint.

16. The five matters which plaintiff company and defendant union could not agree upon and which are presently in dispute are: (1) The hourly wage rate; (2) minimum reporting pay; (3) premium pay involving (a) all hours over 10 in one day; (b) all days in excess of six in one week; (c) all hours worked on Easter, Fourth of July, Thanksgiving and Christmas; (d) all hours worked in excess of 50 in one pay period by part time drivers; (4) all hours on charter trips to be paid at the rate of 20 cents per hour higher than the basic rate of the employe; (5) regular drivers while instructing learners shall not be held responsible for the acts or accidents of the learners.

## Discussion

We have examined with great care the testimony and the record before us and have concluded that as between plaintiff company and defendant union there exists a valid arbitration agreement dated April 17, 1948. Pursuant to the terms of that agreement plaintiff company and defendant union solicited the services of the American Arbitration Association to adjudicate the matters in controversy between the company and the union. This was done by a letter to the American Arbitration Association, dated July 23, 1948, and was

signed by an official of plaintiff company and Wm. G. Clark, president of the Lawrence County Industrial Union Council. The second paragraph of that letter specifically states: "The disagreement is one of wages and contract terms. . . ." The American Arbitration Association replied under date of July 26, 1948, to the joint letter of the company and the union dated July 23, 1948, and stated in the fourth paragraph thereof: "For the information of the Arbitrator upon his appointment and to complete the Association's file, may I suggest you forward a somewhat more detailed statement of the controversy." By letter of August 2, 1948, counsel for plaintiff company stated to the Arbitration Association: "The only matter then to be discussed in this proceeding is the proper hourly wage rate of the drivers and mechanics of the Company." On August 5, 1948, defendant union notified the Arbitration Association that there were five points in dispute and set forth the five points. Four of those points have to do with wages, but the fifth point, which reads as follows, "Regular Drivers while instructing learners shall not be held responsible for the acts or accidents of the learners", does not involve the matter of wages.

Charles R. Wooster testified as follows:

"Q. Well, at the meeting at which this agreement to arbitrate was made, what did you agree would be arbitrated?

"A. Wages is the only thing I have ever agreed to for arbitration."

The same witness later stated:

"Q. And that was included in your negotiations regarding the wage rate?

"A. Anything pertaining to wages was what we couldn't agree upon."

Mr. Wooster then testified:

"Q. As a result of your help in calling in this American Arbitration Association you were willing that this

arbitrator proceed on these several questions and hold immediate discussions, were you not Mr. Wooster?

"A. We wasn't willing to arbitrate all these demands because what we had agreed to arbitrate was wages and what they submitted to arbitrate was several other conditions other than wage rates."

Representing defendant union William G. Clark testified as follows concerning the matters in dispute:

"Q. Now, I show you paper marked defendants' Exhibit 'B', Mr. Clark, and ask you to tell us what that is?

"A. This is our union proposed inclusions in the labor agreement, 16 in all, that we were negotiating on.

"Q. Did you discuss these with Mr. Wooster?

"A. I did.

"Q. Did you come to agreement on any of those terms?

"A. We came to agreement on all except five items.

"Q. I show you paper marked defendants' Exhibit 'C', ask you to tell us what this is Mr. Clark?

"A. These are the five items out of the 16 which we could not agree upon.

"Q. And by 'we', you mean you and Mr. Wooster for the Company?

"A. Correct.

"Q. Did you have any discussion with him concerning these items then since the time you could not agree?

"A. We discussed those items for a matter of two hours, perhaps two hours and a half.

"Q. On what date?

"A. On July 21st.

"Q. Did you say anything to Mr. Wooster about what should be done with them?

"A. Yes, at the conclusion of the meeting on July 21st on the issues on which we could not reach any agreement, I then asked Mr. Wooster if it was all

right with him if we submitted those five items to arbitration and he replied in the affirmative, 'Yes, it was all right'. I then told Mr. Wooster I would prepare a letter to submit it to arbitration with his consent.

"Q. Did you prepare such letter?

"A. I did, I prepared a letter and submitted it to Mr. Wooster on July 23rd.

"Q. Did Mr. Wooster sign that letter with you?

"A. Mr. Wooster did sign it.

"Q. I show you plaintiff's Exhibit No. 3, is that a copy of the letter signed by you and Mr. Wooster?

"A. That is a copy of the letter signed by Mr. Wooster and myself.

"Q. That was signed by you in behalf of the union council?

"A. Correct.

"Q. In the second paragraph thereof Mr. Clark it says 'The disagreement is one of wages and contract terms'.

"A. Yes.

"Q. Now, with relation to these five items contained on Defendants' Exhibit 'C', what did you mean by wages and contract terms in this letter to Mr. Bliss of the Arbitration Association?

"A. I meant wages and contract terms on those five items that are listed there."

Plaintiff company and defendant union having agreed to arbitrate, the crux of the matter then is this: What did they agree to submit to arbitration? We believe the answer is to be found in their joint letter to the arbitration association dated July 23, 1948, wherein they state: "The disagreement is one of wages and contract terms, . . ." Some confusion exists between the parties in construing the meaning of that clause. In reality there need be no such confusion because the matter of wages was admittedly in dispute and the phrase "contract terms" certainly refers to the

matter in dispute, wages. The testimony which we have quoted above clearly substantiates that conclusion.

The fifth point as set forth by defendant union having to do with liability of learners is not related to wages and cannot be considered in adjusting the matter of wages by means of arbitration.

No question has been raised as to the right of the company and the union to submit their dispute to arbitration. Arbitration of such matters is proper and has not only been long recognized by the law but the law has made provisions for it by providing procedures to carry it into effect. Arbitration existed even under the common law.

The parties do have the right to determine and specify the issues to be arbitrated. Upon these issues they must agree before arbitration and the arbitrator is confined to a consideration of the agreed issues. Arbitrators are not permitted to determine their own status and jurisdiction by finding that a party is bound by the contract of arbitration where the terms thereof are themselves in dispute. When an alleged party denies the making of the agreement, such issue must first be determined by a judicial tribunal: Goldstein et al. v. International Ladies' Garment Workers Union et al., 328 Pa. 385. Insofar as the construction of contracts is concerned the Superior Court of Pennsylvania has recently stated the following principles:

"In construing a written contract the effect thereof is to be ascertained not solely from the terms of the instrument, but from the real nature and character of the transaction, giving consideration to all the provisions under which the parties contracted, their situation, relations and any acts indicative of the meaning they ascribe thereto. . . ."

"In construing a contract, the interpretation may not be manifestly absurd but must be a sensible construction, and result in a meaning that reasonably

intelligent men would attach thereto": Tudesco et ux. v. Wilson, 163 Pa. Superior Ct. 352.

### Conclusions of Law

1. The court has jurisdiction over the parties and the subject matter.

2. The agreement entered into between plaintiff company and defendant union constitutes a valid contract as between the parties.

3. The four specific points in dispute between plaintiff company and defendant union involving the matter of wages are proper subjects for submission to arbitration.

4. Charles Lysle Seif, arbitrator of the American Arbitration Association is legally authorized to hear the following matters in dispute between plaintiff company and defendant union, to wit:

1. Hourly wage rate.

2. Minimum reporting pay.

3. Premium pay under the following heads: (a) All hours over 10 in one day; (b) all days in excess of six in one week; (c) all hours worked on Easter, Fourth of July, Thanksgiving and Christmas; (d) all hours worked in excess of 50 in one pay period by part-time drivers; (e) all hours on charter trips to be paid at the rate of 20 cents per hour higher than the basic rate of the employe.

### Final Decree

Now, November 17, 1948, it is ordered, adjudged and decreed that Charles Lysle Seif be restrained and enjoined from considering, hearing and adjudicating any dispute or disagreement between plaintiff company and defendant union concerning the fifth matter set forth in the sixteenth finding of fact, namely: "Regular drivers while instructing learners shall not be held responsible for the acts or accidents of the learners".

It is further ordered, adjudged and decreed that plaintiff company and defendant union submit for arbitration before Charles Lysle Seif, arbitrator for the American Arbitration Association, the following matters in dispute between them:

1. The hourly wage rate.
2. Minimum reporting pay.
3. Premium pay under the following heads: (a) All hours over 10 in one day; (b) all days in excess of six in one week; (c) all hours worked on Easter, Fourth of July, Thanksgiving and Christmas; (d) all hours worked in excess of 50 in one pay period by part-time drivers; (e) all hours on charter trips to be paid at the rate of 20 cents per hour higher than the basic rate of the employe.

All costs in connection with the court proceedings shall be paid one half by plaintiff company and one half by defendant union.